IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD SAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-CV-362-GLJ |
| ) | |
| LELAND DUDEK,[1] ) | |
| Acting Commissioner of the ) | |
| Social Security Administration ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Claimant Richard Sam requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On February 16, 2025, Leland Dudek became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Leland Dudek is substituted for Kilolo Kijakazi as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he

---

[2] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairments *are not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background and Procedural History

Claimant was 53 years old at the time of the most recent administrative hearing. (Tr. 983). He completed high school and alleges an amended onset date of September 15, 2017, due to limitations imposed by high blood pressure, a hernia, arthritis, neuropathy of the feet, a meniscus injury, and injuries to his shoulders, knees, and left elbow. (Tr. 231, 983, 1591).

## Procedural History

On February 8, 2018, Claimant protectively applied for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 207-223). Administrative Law Judge ("ALJ") Michael Mannes held an administrative hearing and determined Claimant was not disabled in a written opinion dated July 13, 2020. (Tr. 30-67, 1011-18). This Court reversed and remanded the case for further proceedings on March 25, 2022. (Tr. 1037-52). While Claimant's 2018 applications were pending, Claimant filed a second application for supplemental security income benefits on June 17, 2020, which was denied by ALJ Mannes on December 9, 2021. (Tr. 1062-76, 1424). The Appeals Council vacated the December 9, 2021, decision and instructed the ALJ to consolidate Claimant's disability claims. (Tr. 1055). ALJ Leland Bentley held a second administrative hearing on November 17, 2022, and a third administrative hearing on

February 28, 2023, and determined Claimant was not disabled in a written opinion dated March 23, 2023. (Tr. 946-65, 980-1007). The Appeals Council denied Claimant's exceptions to the ALJ's decision, (Tr. 930-937, 1262-1302), making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.971, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. (Tr. 966-67). At step two he determined that Claimant had the severe impairments of bilateral knee osteoarthritis, status post right lateral meniscectomy and chondroplasty patella, bilateral hip osteoarthritis, bilateral shoulder osteoarthritis, status post left rotator cuff repair and open distal clavicle resection with reconstruction of acromioclavicular joint, and obesity. (Tr. 949). He found at step three that Claimant did not meet any Listing. (Tr. 950-51). At step four he found Claimant had the residual functional capacity ("RFC") to perform "'light work' as defined in 20 CFR 404.15679b) and 416.967(b) with occasional climbing of ramps or stairs; no climbing of ladders or scaffolding; occasional balancing, stooping, kneeling, crouching, and crawling; occasional overhead reaching bilaterally; frequent, but not constant, handling and fingering bilaterally; and avoidance of unprotected heights and dangerous moving machinery." (Tr. 951). The ALJ then concluded that although Claimant could not return to his past relevant work, he was nevertheless not disabled because there was work, he could perform in the national economy, *i.e.*, mailroom clerk, storage facility clerk, and school bus monitor. (Tr. 951-67).

## Review

Claimant contends that the ALJ erred by failing to: (1) comply with SSR 16-3p in finding Claimant's allegations of disability inconsistent with the evidence by not considering the reasons why Claimant did not seek further treatment; (2) link his RFC determination with the evidence and engaging in a function-by-function assessment of Claimant's RFC as required by Soc. Sec. R. 96-8p; (3) properly account for Claimant's obesity; and (4) evaluate the persuasiveness of Masoud Moradi, DPM's opinion that Claimant would need to rest, ice, elevate, and compress ("RICE") his feet. The Court agrees with the first proposition and finds that this matter should be reversed.

The relevant medical evidence reveals that in April 2013 an MRI of Claimant's right knee revealed a bucket handle tear of the lateral meniscus and a partial tear of the ACL. (Tr. 437). In February 2014, Claimant visited orthopedic doctor David J. Flesher, M.D., who assessed Claimant with a right knee strain resulting in a complex tear of the lateral meniscus in addition to a partial tear of the ACL and recommended Claimant undergo surgery, which occurred in April 2014. (Tr. 434-37). Following the surgery, Claimant followed-up with Dr. Flesher monthly and engaged in physical therapy until July 18, 2014, at which point Dr. Flesher found Claimant had completed physical therapy, reached the maximum medical improvement, and completed a "Work Status" report finding Claimant would require permanent restrictions of no climbing, kneeling, crawling, or squatting, and a 50-pound lifting restriction. (Tr. 423, 428-33).

Following his amended onset date in September 2017, Claimant visited his primary care physician Paul Y. Chin, M.D. in November 2017, complaining that his second and

third finger joints ached during manual labor. (Tr. 772). Dr. Chin noted Claimant's fingers were without gross deformities or signs of inflammation and assessed Claimant with suspected second and third finger joint osteoarthritis. (Tr. 772-73). In January 2018 Dr. Chin completed a "Choctaw Tribal Health Form" indicating Claimant suffered from hypertension, diabetes, finer joint osteoarthritis, knee osteoarthritis, obesity, GERD, right ulnar nerve entrapment, "bilateral shoulder disorder," and umbilical hernia surgical repair. (Tr. 680). Dr. Chin concluded that as a result of Claimant's conditions Claimant was incapacitated for an undeterminable amount of time, but it was possible he could be made employable through treatment and indicated an occupational therapy evaluation was needed to assess Claimant's labor capacity and measure improvements. (Tr. 681).

On June 14, 2018, Christopher Sudduth, M.D., performed a consultative examination of Claimant and found Claimant's gait was steady and symmetric, he was able to walk on heels and toes with ease, and had a full range of motion of his neck and back, but was unable to squat and rise from that position. (Tr. 805).

Despite a July 2018 referral to the Osteopathic Manipulative Treatment ("OMT") Clinic, Claimant did not follow up with OMT. On October 11, 2018, Claimant followed-up with Dr. Chin, reporting bilateral hip pain that had been ongoing for several years that had progressively worsened. (Tr. 877). Examination revealed no palpable hip tenderness, and no tenderness triggered by moving from a standing to seated or squatting position. (Tr. 877). X-rays at this time revealed mild degenerative changes bilaterally. (Tr. 827).

However, Claimant denied steroid injections for his hip pain.[3] (Tr. 1718, 1721, 1729, 1912, 1980). In August 2018, Dr. Chin completed a second Choctaw Tribal Health Form and opined that Claimant remained incapacitated for an undeterminable amount of time, but that it remained possible for Claimant to be made employable by treatment. (Tr. 859).

In July 2019 Claimant visited Larry Lewis, M.D., for an examination after which Dr. Lewis completed a medical source evaluation form stating, *inter alia*, Claimant would need to elevate his legs and could not stand and/or walk for up to two hours in an 8-hour workday, sit for up to six hours in a normal seated position, lift five pounds on a repetitive basis, or stoop. (Tr. 915-921). Dr. Lewis also found Claimant would miss three or more work days per month and would be unable to function at a productive level of work with medication. (Tr. 914-15, 929).

On August 16, 2019, Claimant visited Dr. Chin reporting that he frequently labored outdoors and requesting Dr. Chin complete another "Choctaw Tribal Health Form" so that he may receive financial assistance.[4] (Tr. 1809). Five days later, Claimant contacted his primary care provider requesting a refill of his narcotic medication; Dr. Chin advised Claimant that he would not prescribe Claimant narcotics indefinitely, and recommended chronic pain management. (Tr. 1807). The record does not reflect that Claimant pursued any pain management treatment.

---

[3] It is unclear whether Claimant denied steroid injections on several occasions or only on one occasion as the note appears to be routinely carried throughout several of Dr. Chin's treatment notes.

[4] Dr. Chin's treatment notes reflect that he completed this form, but it does not appear in the record. (Tr. 1809).

On October 26, 2021, and November 9, 2021, Claimant followed-up with Dr. Chin and requested that the Choctaw Tribal Health Form be completed again so he may receive financial assistance. The completed forms from both visits opined Claimant was incapacitated as a result of his impairments, but it was possible for Claimant to be made employable by treatment. (Tr. 1963, 1977). Notably, at the November 9, 2021, visit, Claimant reported continued chronic hip pain without any acute exacerbation and examination revealed independent stance and ambulation without observed bilateral lower extremity muscle weakness or triggered vertebral, hip, or knee major pain. (Tr, 1979). Claimant also indicated that he utilized a cane, which he left in his vehicle, and requested a prescription for a new cane. (Tr. 1979). In April 2022 Claimant returned to Dr. Chin reporting that he was very active, engaged in "lots of outdoor work" and requested that Dr. Chin complete another Choctaw Tribal Health Form.[5] (Tr. 1728).

As to Claimant's feet impairments, the record reflects that Claimant received a steroid injection from podiatrist Reed K. Burke, DPM, for his right foot on October 1, 2018, and for his left foot on October 29, 2018. (Tr. 873-75).

Claimant established care with Dr. Moradi in July 2021 for a diabetic foot exam complaining of tingling of the bilateral feet with no pain. (Tr. 1915-19). Upon examination, Dr. Moradi found a visual inspection of Claimant's feet to be normal with full muscle strength in the bilateral lower extremity muscle groups and epicritic sensation present. (Tr. 1917-19). Claimant followed-up with Dr. Moradi in August 2022 and was diagnosed with

---

[5] Dr. Chin's notes reflect that he completed this form and that he had also completed one in January 2022 and in April 2022. (Tr. 1729). These completed forms do not appear in the record.

plantar fasciitis of the right foot. (Tr. 1917-19). Dr. Moradi recommended Claimant RICE his feet and administered a cortisone injection into Claimant's right heel. (Tr. 1712, 1734-37, 1746).

In 2018, state examiner Suzanne Roberts, M.D., determined initially that Claimant could perform light work except he could occasionally climb ladders, ropes, scaffolds and would be limited in reaching in any direction. (Tr. 72-78). Upon reconsideration state examiner Mohamed Kanaa, M.D., found Claimant had similar limitations except that Claimant would only be limited in reaching overhead with his left upper extremity. (Tr. 101-06). In 2020, in connection with Claimant's second application, state examiners Karl K. Boatman, M.D., and David M. Bailer M.D., determined that Claimant could perform a full range of light work. (Tr. 1102-14, 1117-35). As relevant to this appeal, Dr. Boatman and Dr. Bailey found Claimant's obesity to be a severe medically determinable impairment and explicitly noted that they considered his obesity in their RFC assessment and no further limitations were necessary. (Tr. 1112, 1131).

At the most recent administrative hearing, Claimant testified that he was 5'8", weighed 220 pounds, and that his arthritis and diabetes caused his fingers to be stiff and lock up. (Tr. 986-87). He testified that his hips are in constant pain, he uses a knee brace and cane, he could walk half a block before needing to rest and stand for fifteen to twenty minutes before needing to sit or rest. (Tr. 986-90).

In his written opinion at step four, the ALJ extensively summarized Claimant's hearing testimony and the medical evidence in the record. (Tr. 946-63). He then found that Claimant's statements about the intensity, persistence, and limiting effects of his symptoms

were not entirely consistent with treatment records, reasoning that Claimant had reported on several occasions that he engaged in outdoor labor, denied new complaints, rarely exhibited abnormal examination findings, denied steroid injections for his hip pain, and did not establish care with OMT or pain management. (Tr. 953). The ALJ found the opinions of the state agency medical consultants partially persuasive, but found "additional limitations" were appropriate in light of the evidence as a whole. (Tr. 965). Similarly, the ALJ found the opinion of Dr. Burk persuasive but concluded the opinions of Dr. Chin, Dr. Lewis, and Dr. Flesher were unpersuasive. (Tr. 964-65).

## I.   Soc. Sec. R. 16-3P

Claimant asserts that the ALJ failed to comply with Soc. Sec. R. 16-3p by failing to inquire of Claimant as to why he did not seek additional treatment. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairments(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . .

Soc Sec. R. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[6] Here, the ALJ applied the two-step process for evaluating Claimant's statements about his symptoms and

---

[6] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *1. "SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

concluded that his statements were not entirely consistent relying, in part, on Claimant's conservative treatment and failure to pursue further treatment such as pain management and establishing care with OMT. (Tr. 953).

The Tenth Circuit has recently instructed "that an ALJ must consider the *Frey*[7] factors before discounting a claimant's symptom allegations based on a failure to pursue treatment or take medication." *Allred v. Comm'r of Soc. Sec.*, 2023 WL 3035196, at *3 (10th Cir. Apr. 21, 2023). ("[T]he ALJ should have considered the *Frey* factors before discounting Ms. Allred's claim of disabling symptoms based on her periods of treatment noncompliance."). The *Frey* factors for "reviewing the impact of a claimant's failure to undertake treatment" are: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." 816 F.3d at 517.

Upon review, the ALJ did not have the benefit of *Allred*, as his opinion pre-dates *Allred*, in which the Tenth Circuit clarified that *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993), and not *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling."), applies. Accordingly, due to the ALJ's failure to consider the possible reasons Claimant did not

---

[7] *Frey v. Bowen*, 816 F.3d 508, 515 (10th Cir. 1987).

pursue further treatment, and because the Tenth Circuit is clear that the ALJ should have considered the *Frey* factors before discounting Claimant's claim of disabling symptoms, this case must be reversed and remanded.[8]

## II. Soc. Sec. R. 96-8P

Claimant next maintains that the ALJ failed to comply with Soc. Sec. R. 96-8p by failing to cite evidence supporting Claimant's ability to: (i) occasionally balance, stoop, kneel, crouch, or crawl; and (ii) frequently handle and finger as opposed to occasional handling and fingering. Claimant also asserts as a part of this argument that the ALJ failed to include additional limitations on Claimant's ability to walk and/or stand because Claimant required injections in his heels, was advised to RICE his feet, and because the ALJ found the state agency physician's opinions did not adequately account for Claimant's limitations resulting from his knee and hip osteoarthritis.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p

---

[8] The Commissioner argues that any error in the ALJ's symptom analysis is harmless because the ALJ's evaluation remains supported by his other reasons for finding Claimant's statements inconsistent with record. *See Pickup v. Colvin*, 606 Fed. Appx. 430, 434 (10th Cir. 2015) (affirming an ALJ's symptom evaluation despite finding two of the reasons provided by the ALJ were not supported by substantial evidence because the remaining "analysis was, on balance, proper, and supported by substantial evidence."). However, in light of *Allred*, the Court cannot find that such error is harmless here. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that a finding of harmless error requires a court to "confidently say that no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way.").

because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citing *Brown v. Comm'r of the Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. Feb. 19, 2003)).

Despite Claimant's contentions, the ALJ adequately explained and supported his decision with respect to Claimant's ability to stand/walk, balance, stoop, kneel, crouch, crawl, handle and finger, and stand/walk. Indeed, the ALJ discussed, *inter alia*, Claimant's bilateral knee osteoarthritis, bilateral hip osteoarthritis, and finger joint osteoarthritis. Particularly, the ALJ discussed Claimant's hearing testimony, the various medical opinions of record, Claimant's October 11, 2018, hip x-rays which revealed degenerative hip changes, Claimant's November 9, 2021, visit with Dr. Chin whereat he complained of chronic hip pain, reported using a cane, and received a prescription for a cane. (Tr. 953-65).

Ultimately, the ALJ concluded that the state agency physician's opinions were partially persuasive but found further postural and manipulative limitations were warranted in light of Claimant's knee and hip complaints, finger joint problems, and impairments that could reasonably be expected to result in manipulative limitations despite never exhibiting any deficit in grip, strength, and gross or fine manipulation. (Tr. 965).

In this regard, Claimant asserts that the ALJ's RFC is not supported by substantial evidence because he found the state examining physician's opinions only partially persuasive, all other opinions unpersuasive and failed to cite evidence in support his RFC.

However, the ALJ explained in detail, as noted above, why the evidence did not support any further restrictions, and when confronted with conflicting medical opinions it is consistent with the ALJ's prerogative to adopt a middle ground that does not fully embrace either one. *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) ("Faced with the conflicting opinions, the [ALJ] adopted a middle ground. . . . In this manner, the judge arrived at an assessment between the two medical opinions without fully embracing either one. We upheld this approach in *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)").

As such, the ALJ's opinion clearly indicates he adequately considered the medical evidence of record, and the Court can follow the ALJ's reasoning as to why Claimant's knee, hip, and finger impairments do not warrant any additional limitations. *Richard v. Berryhill*, 2018 WL 920651, at *2 (W.D. Okla. Feb. 16, 2018) ("a decision of less-than-ideal clarity should be upheld [where] the agency's path may be reasonably discerned.") (internal citations and quotations omitted).

<u>Function-by-Function Analysis.</u>  Claimant next argues that the ALJ's RFC assessment is flawed because he failed to assess Claimant's RFC on a function-by-function basis as required by Soc. Sec. R. 96-8p. The Court finds that although the ALJ should have conducted a function-by-function assessment of Claimant's capacities, any error in this regard was harmless.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Soc. Sec. R. 96-8p, 1996 WL 374184, at *3 (July 2, 1996). This "function-by-function" assessment requires the ALJ to assess Claimant's exertional capacity and nonexertional capacity

limitations and requires the ALJ to consider the "seven strength demands" of "sitting, standing, walking, lifting carrying, pushing, and pulling." *Id.* at *5. "Despite the seemingly rigid requirements of SSR 96-8p, the Tenth Circuit has held it harmless error when an ALJ fails to engage in an 'explicit function-by-function analysis' if the ALJ did not overlook a claimant's functional problems and finds the evidence does not support a limitation." *Michael D.B. v. O'Malley*, 2024 WL 1008570, at *3 (N.D. Okla. Mar. 8, 2024) (quoting *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014)).

It is undisputed that the ALJ failed to engage in a function-by-function assessment in finding Claimant has the RFC to "perform 'light' work as defined in 20 CFR 404.1567(b) and 416.967(b)." However, Claimant has not pointed to any evidence indicative of further limitations, and it is clear the ALJ performed this analysis in his decision through his analysis of the record. Thus, any error in the ALJ's failure to explicitly find Claimant could perform the full range of the sit/stand/walk requirements of light work was harmless. Nonetheless, because this case is being remanded for other reasons, on remand the ALJ should engage in a proper assessment of Claimant's RFC.

### III.   Medical Opinion of Dr. Moradi

Claimant next posits that the ALJ erred by not articulating the persuasiveness of Dr. Moradi's "opinion" that the Claimant needs to RICE his feet. The Commissioner argues that this evidence is not a medical opinion which the ALJ was required to articulate the persuasiveness. The Court agrees with the Commissioner.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. The Social Security Administration has defined

categories of evidence, including, as pertinent here, "medical opinions" and "other medical evidence." *See* 20 C.F.R. § 404.1513(a)(2), (3); 416.913(a)(2), (3). The regulations define a "medical opinion" as:

> a statement from a medical source about what an applicant can still do despite his impairment(s) and whether he has one or more impairment-related limitations involving the:
>
> (i) Ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Ability to perform other demands of work, such as seeing, hearing, or using, other senses; or the
>
> (iv) Ability to adapt to environmental conditions such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). Conversely, "other medical evidence" includes "judgments about the nature and severity [of a claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1520c. However, the "ALJ is not required to articulate the persuasiveness of other medical evidence with reference to supportability and consistency." *M.H. v. Kojakazi*, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023).

The record reflects the ALJ considered Claimant's August 3, 2022, visit with Dr. Moradi, and the ALJ was not required to articulate whether he found Dr. Moradi's recommendation that the Claimant RICE his feet persuasive because it did not include specific functional limitations and was therefore not a medical opinion. *Tipton v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2525036, at *4 (E.D. Okla. Mar. 15, 2023) (concluding the ALJ did not err in articulating the persuasiveness of "Client Assessment Records" which did not include specific functional limitations and, as such, did not constitute medical opinions.); *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding the ALJ correctly refused to consider a doctor's description of a claimant's ability to perform in the workplace as "limited" or "fair" in formulating the RFC because it failed to specify the claimant's functional limitations.).

### IV.  Obesity

Lastly, Claimant also challenges the ALJ's evaluation of Claimant's obesity. Soc. Sec. R. 19-2p requires an ALJ to consider when assessing the RFC that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." Soc. Sec. R. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)". *Id.* at *2. Here, the ALJ considered Claimant's obesity at step two, concluded that it was severe although "no treating or examining physician imposed any limitation or restriction due to obesity." (Tr. 951). At step three the ALJ set forth Claimant's height, weight, and BMI, and noted that Claimant's obesity is severe because it "could reasonably be expected to exacerbate

symptoms in connection with his other severe impairments[.]" (Tr. 951). At step four the ALJ discussed the state examiners opinions, collectively, which included Dr. Boatman's and Dr. Bailey's opinions, who both considered Claimant's obesity a severe impairment, but nonetheless found it did not further affect the RFC. (Tr. 965, 1112, 1131). This is sufficient to establish that Claimant's obesity was considered with his other impairments in the RFC. *See Archie D. F. v. Saul*, 2021 WL 1348264, at *9 (N.D. Okla. Apr. 12, 2021) (finding no error in evaluating obesity where "the ALJ considered 'the entire record,' including Plaintiff's obesity," and relied on a medical source opinion "which noted Plaintiff's obesity and instances of elevated BMI" as support for the RFC assessment.). The Court therefore finds that the ALJ did not err in evaluating Claimant's obesity.

Nonetheless, because the ALJ failed to properly evaluate Claimant's symptoms pursuant to Soc. Sec. R. 16-3p and *Allred*, the decision of the Commissioner is therefore reversed, and the case remanded to the ALJ for further analysis of *all* the evidence in the record. If such analysis results in any change(s) to Claimant's RFC, the ALJ should redetermine what work Claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 12th day of March, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**